Good morning, Your Honors. May it please the Court, my name is Timothy Scott on behalf of the appellant Alida Caruto. I'll endeavor to reserve one minute for rebuttal. This case is about the promise that the government made to Ms. Caruto that even if she initially waived Miranda, she could still stop answering questions at any time. This conviction in this 168-month sentence should be reversed for three reasons. First, the Constitution protects against the fundamental unfairness of advising or assuring a suspect that they have a particular constitutional right and then punishing the person when they actually exercise it. That's number one. Number two, the government actually did punish the exercise of the constitutional right to stop answering questions at any time in this case and nothing in the Ochoa Sanchez case or the Anderson v. Charles case permits what the government did in this trial. And third, error was harmful. Now first, as a matter of what the Supreme Court has described as fundamental fairness, it is impermissible to assure a suspect that they can either remain silent or stop answering questions at any time and then, once the suspect picks the government up on that offer, to turn around and argue to the jury that they are guilty due to things that they failed to say during that post-arrest interview. The right to stop answering a question is every bit as much a right under the Fifth Amendment as is the right to complete silence. The Miranda v. Arizona case made clear that even after an initial waiver, a suspect can invoke the right at any point in the interrogation. The Supreme Court said the same thing in Michigan v. Mosley, holding that a suspect may selectively invoke Miranda rights and may control the duration of an interview by terminating it at any time. And this Court, both on bonk and in panel decisions, has confirmed this same right to stop answering questions at any time. That's as a legal matter. As a factual matter, on page 3 of the ER, we see the waiver form that was actually provided to Ms. Caruto. And the waiver form states clearly that even if you agree to answer questions, you may stop answering questions at any time. Sotomayor, let me ask you sort of the practical question. When a defendant chooses to testify, as your client did, and she has also chosen to answer some questions before invoking the Miranda opportunity for silence, what is the permissible scope of cross-examination about prior inconsistent statements versus prior inconsistent silence? How does one draw that line permissibly? The distinction should be drawn between an actual inconsistency and an omission. That's where the line should be drawn. So if before invoking the person had said, I was never at the store, and then on the stand they say, well, I was at the store, but I wasn't in the aisle where the theft took place, that's fair game? Fair game. If there's an actual inconsistency, then that's something that the government should be permitted to impeach upon. So what are the points here that you would say were comments on omissions as opposed to inconsistencies? Here are the specific omissions. First, the government in its closing argument, this begins on page 322 and goes to page 323 of the ER, argues to the jury, this is how we know that Ms. Caruto knew that there was cocaine. This is why she's guilty. Let's look at her post-arrest statement, and then it discusses the three discrete sentences that it attributed to Ms. Caruto. Then on page 323, the government says, but now, seven months later, she comes into court, and here is what she says. And then with sort of this twist of skeptical rhetoric, the government goes through virtually her entire trial testimony. So in that fell swoop, in that juxtaposing her post-arrest statement, all three sentences of it, to her trial testimony, the government argues anything that's in her trial testimony that is not one of those three discrete sentences that our agent testified about is a newly fabricated lie. So I would argue in the first instance, everything that Ms. Caruto said on the stand that wasn't one of those three sentences, the government highlighted to the jury as a recent fabrication, as an omission. So that's sort of as a general matter, everything she said. As a more specific matter, the government says also on page 323, why didn't she say I was selling the truck? Why didn't she say I was selling the truck? The fact that Ms. Caruto was in Mexicali and allowed someone to test drive the truck, and that gave them the opportunity to secrete the cocaine into it, was a key part of the defense. But on page 295 of the ER, the government admits to the district court, nobody ever asked her about selling the truck. That was an omission. Let me ask you about harmfulness, because there certainly is plenty else in the closing argument as well. For example, well, if she kept running out of gas, then don't you think she would have taken it to the dealer? Or things that really aren't related to what you're talking about, and, you know, she's nervous. There are lots and lots of other pieces to the argument besides that juxtaposition. So why wouldn't that be like Lopez where the error was harmless? Because of the government's concession and its response brief, that credibility, Ms. Caruto's credibility, was the key to the case. In fact, the government said in its own response brief that it made her credibility the centerpiece of the closing argument. It said that her credibility was not to be believed because of the juxtaposition, because of the omission between the post-arrest statements and her trial testimony. And then it went on to discuss why she should not be believed as a general matter. Here is the Foster case as one example in this court where this court has held that when credibility is central to the defense, Doyle error is not harmless. Additionally, under the Velarde-Gomez-Von Bonk decision, this court held that when evidence of knowledge in a drug case is otherwise circumstantial, then error is not harmless. Certainly, the government had arguments to make that Ms. Caruto appeared nervous and quarreled with different aspects of her story. But at the end of the day, there was no confession. There was no corroborating testimony from a cooperating witness or any other source to show knowledge. The only disputed element was knowledge, and it was circumstantial evidence at best. And because Ms. Caruto's credibility was harmed and directly attacked with Doyle error, then error cannot be harmless under the circumstances. This distinction between an omission and an inconsistency has not been addressed in this court in a Doyle setting. The Ochoa v. Sanchez case, which the government relies on almost exclusively, not Ochoa v. Sanchez, but Ochoa Sanchez, did not involve a case where the defendant invoked. It involved a case with a full post-arrest statement, as near as we can tell from the statement of facts, and it wasn't confronted with, frankly, the thornier issue of what to do when there's simply a three-sentence statement and then an invocation. I respectfully suggest that this Court should not be the first to extend Ochoa Sanchez and this language of critical omissions to this new setting of an invocation and this new setting of a brief, truncated statement. I think you started to talk about what more specific things you consider to be actual comments on omissions as opposed to inconsistencies. Yes. Do you have any other specific examples? Yes. Beyond the general everything that she said seven months later was one. And the second was, why didn't she say I was selling the truck? And that was something that they conceded had never been discussed. Another one is, why didn't she volunteer the phone number of this person, Jose Jimenez? There was no evidence whatsoever that she was ever asked what the phone number was. In fact, all of the inconsistencies that the government would like to argue exist in this case simply aren't supported by the record because of the key fact that we don't know what questions were asked. The government failed to preserve a record of what happened in the interview room, either by audio or videotaping it, and they didn't elicit what questions were asked from the agents themselves. So we don't know if any of the statements were inconsistent because we don't know what the questions were. It seems like some of them, some things were fair game inconsistencies, and in particular it seems like what she said before was that she brought the truck down and this mysterious person had it for three weeks and then she got it back the day she drove it back versus I drove down that day, gave it to them for an hour or two, and then got it back. Aren't those inconsistent? They're not. I notice I'm under one minute. May I respond to that question without losing my rebuttal time? Yes. Thank you, Your Honor. Oh, sorry. Is that his? That's fine. Keep going. The answer to that question is no. Those were not inconsistencies. The three statements that the government attributed to her are, number one, that she lent the truck to unknown individuals three to four weeks before her arrest. The second statement that they attributed to her was that she received the truck that day and was going to L.A. And then the third statement was she believed she was helping a friend. Again, because we don't know what questions were asked, we don't know if those three statements are interrelated to one another, and we don't know if she was asked, was the truck out of your control for those whole three to four weeks. Without knowing the questions, we don't know what the answers mean. I'll learn tomorrow when I pull up the audio version of this argument that there are answers that I gave that simply weren't responsive to the questions that the court gave, unfortunately. I learn that every time I argue, and so it is with human nature. Every question informs the answer, so we don't know if there was inconsistencies or not. I would also point out, just briefly respecting the time that I have left, that the cross-examination of the agent further underlines the argument that there were inconsistencies. The agent acknowledged on cross-examination that his contemporaneous notes from the post-arrest statement never suggested that unknown persons borrowed the car. What it says is someone borrowed the car, and the agent admitted on cross that it's likely that what happened is she said someone borrowed the car, but because she invoked, that never got followed up on. Okay, you are beyond your time, but we appreciate the answers to the question. We'll hear from the government. May it please the Court, Your Honors. My name is Lawrence Kasper on behalf of the appellee. Your Honors, this is a case about impeachment by contradiction. It is not, as Appellant's counsel has suggested, a case about omission. Well, what about the particular things that counsel indicates? First of all, selling the truck, which was not the comment on her failure to discuss earlier the selling of the truck, as to which there was no earlier contradiction. Secondly, this unknown persons issue. It seems to me that the agent did testify that she may well have not said that, and it seems completely incredible that she would have said it. Nobody talks that way, i.e., I gave it to unknown persons. And thirdly, the telephone number. At least those three seem to me to be clearly comments on things that were not contradicted. And, Your Honor, the district court here specifically reviewed and carefully reviewed each of these statements and found, for example, at excerpts of record page 278, that there was, in fact, an inconsistency between defendant's statements that the vehicle was loaned to unknown individuals and her trial testimony that Jose Jimenez borrowed the vehicle. Except that the the that seems to me to be clearly erroneous because the agent testified that she may well not have said unknown persons. Well, the agent did not testify that she may well not that she may well not have said. What the agent testified was it was possible that the word someone had been used. Right. Isn't that different? If she had said someone took the truck and nobody asked her who? Your Honor, I believe that that's a factual dispute for the jury to resolve, not a question to be addressed in this manner. The court, the district court, specifically found a number of inconsistencies between the testimony that she was going to sell the vehicle. Do you think there's any chance that she actually said unknown persons took the truck? Is that possible? Has anybody ever said that? Well, Your Honor, whether she said unknown persons or someone borrowed the truck, I don't know who. That's certainly a possible phraseology. And the record is clear that the agent's testimony on direct was that his understanding of what was stated during that interview was that unknown persons took the truck. Let's put that one aside. What about the others? Did she ever say anything inconsistent with her trying to sell the truck? Well, yes, Your Honor.  First, she stated in post-arrest that she lent the truck to unknown individuals in Mexicali three to four weeks before the arrest, and she received that vehicle back on the date of her arrest. Now, the standard, Your Honor, and I'd urge the court to consider the McLuda decision that this court rendered, which was, in fact, a partial silence case. And the standard here is arguable inconsistency, not actual inconsistency. And in that case, this court explained, consistent with Ochoa Sanchez, again, that once a defendant makes a post-arrest statement that, quote, may arguably be inconsistent with the trial story, close quotes, a question of credibility has been raised and the government is entitled to probe the post-arrest statement, including the defendant's failure to provide critical details. And, in fact, footnote one of that decision makes clear that the standard of arguable inconsistency was necessary to the holding of Ochoa Sanchez. Now, Appellant here tries to cloak herself with immunity after she waived her Miranda rights and provided a partial statement. It was an actual conflict and certainly arguably inconsistent with her trial testimony. And as I've indicated, not only did the district judge here make a finding of inconsistency, but for all of the rhetoric in Appellant's brief, her trial counsel acknowledged at excerpts of Record 290 that there was at least an arguable inconsistency between an unknown individual as described in Appellant's post-Miranda statement and Jose Jimenez, who was identified in Appellant's trial testimony. The Makluta inconsistency was quite a bit more than arguable, don't you think? To say, I didn't know it was heroin versus I was entrapped. Well, I believe the argument that was made in that case was that the defendant didn't state in her post-arrest, in his post-arrest statement that he was pressured to make the sale of heroin versus the defendant's entrapment defense of trial. And in the closing argument in that case, in the post-arrest statement, the defendant did not, in fact, state that he'd been set up. And I do believe, Your Honor, that that is analogous to the circumstances here where we have statements that were found to be, and if the court examines the record carefully here, the district court spent a considerable number of pages reviewing these statements with the parties and previewing them before closing argument and made the determination that there were, in fact, these inconsistencies and allowed the government to make its arguments at trial. Now, with respect to the specific statements, she didn't say that it was Jose Jimenez, and by the way, here's his phone number because I spoke to him. With regard to the phone number issue, an unknown person naturally is not going to have the phone number of an unknown person. So that is inconsistent as to the phone numbers. As to, I just spoke to him and this is the man who had my truck put a few hours ago, this is the man who must have put the cocaine in my truck. Again, an unknown individual versus Jose Jimenez. The statements, Your Honor, by contract with cases in which this court has found error, the statements made here were very narrowly tailored to focus on appellant's contradictory statements and inconsistent statements regarding the status of the appellant's truck. I'm interested in hearing your views on harmless error. Thank you, Your Honor. With respect to harmless error, I want to address each of the factors. The credibility point that counsel makes that you've essentially conceded that credibility was the issue here. Well, with respect to credibility, Your Honor, there were numerous other arguments suggesting guilt that were made, both during the testimony and evidence presented at trial and with respect to the closing argument and rebuttal argument of counsel in this case. Just briefly, appellant in this case was the driver. She was the sole occupant of a vehicle which had 34.5 kilograms or approximately 76 pounds of cocaine, which the evidence undisputedly showed had a value of $950,000. During primary inspection, she was flirtatious, behaved in an erratic manner, pulled up her shirt, showed her scar to the primary inspector, did behave similarly at secondary, and that was also observed by the K-9 enforcement officer. And I'd also suggest that that sharply contrasts with her testimony at trial, in which she denied ever having lifted her shirt, notwithstanding the fact that all three of those officers testified otherwise. In addition, in this case, there was strong 404B evidence introduced that the defendant had previously crossed this same port of entry with a non-factory compartment in her vehicle. With nothing in it? At that time, there was nothing in it. But certainly, that would inform and give rise to the question as to why there was a non-factory compartment and also as to the issue of her knowledge and other 404B issues. Your Honor, there's also, in this case, the defendant's own critical gaffe when she said, Jose Castillo instead of Jose Jimenez. She couldn't even get the name right for the individual who she blamed and suddenly blamed at trial for the first time for these circumstances. Was that other car her car, or what were the circumstances that were in the record of that prior act? Your Honor, I know she was driving that vehicle. I do not know. I did not handle this case below. I do not know whether she was in fact. And it's not in the record. I mean, what came out at trial about it was simply she was driving some mysterious car that no one knows who it was under some mysterious circumstances. That's my understanding is that she was driving the vehicle. I don't have further knowledge. I'd be happy to follow up on that. No, it doesn't matter what actually happened. What matters was what came out at trial. Your Honor, there were essentially three discreet comments made in this case, and they were not repeatedly emphasized, nor did the prosecutor dwell on them. A close look at these statements, and, Your Honor, I see I'm out of time. May I have just a moment to look at these? Yes, go ahead. Thank you, Your Honor. Your Honor, in this case, the inference of guilt argued was not from sounds but rather from the inconsistent statements made by the defendant. These statements bore directly on her credibility. For these reasons and those detailed in our brief, the government urges this Court to infirm the jury verdict in this case. Thank you. Thank you, counsel. Mr. Scott, you did use up your time, but we'll just stir a minute of it since we used a lot of it up with questions. Thank you very much, Your Honor. Three points. Number one, as to the argument that the district court made specific factual findings and then the implication that this court should afford an amount of deference to that. Number one, this court need not employ a clear error standard to the district court's finding. I would suggest to the court that this is, at best, a mixed question of law and fact as to whether the government should be allowed to impeach under the circumstances that it did, because this is a Doyle question. So I don't think a clearly erroneous standard should apply. But even if it did, the district court was clearly erroneous in holding that this was an actual contradiction. And furthermore, the district court never passed upon the issue of whether why didn't she say I was selling the truck was a contradiction. And, in fact, if it had been asked to rule on that, the only evidence in the record is that the government conceded that that was not the case, that they had never asked that before. Kagan. Looking at the statement that the agent recorded with regard to whether she said that the people she lent it to had the car for three weeks, it's not lucid that that's what he was writing down there. Was there a finding on that? There wasn't. And what the agent conceded on cross was that the sentences didn't necessarily link to one another. I think specifically in the context of she was helping a friend by driving to L.A., the agent admitted that there was not necessarily. But she said I lent it to them three weeks ago. And then she said he said she said. And then she said she received it today. Right. I mean, there could be a hole in the middle that says and she got it back and then she gave it to him again and then she got it back today. Which is exactly what the trial testimony was. That's exactly what she explained. I don't understand why that's not an arguable inconsistency, though, There's two responses to that. One, it's not an arguable inconsistency. And second, the arguable inconsistency standard ought not be applied in an invocation case. But it's not an arguable inconsistency because it's entirely consistent to allow somebody to borrow a car three to four weeks prior and then they borrow it and return it and then to get the car on that day as well. It's the gap that was just referred to that there's nothing inconsistent with allowing somebody to borrow a car before and then also receiving it that day with something happening in between. What it brings to mind is that Casamento case out of the Second Circuit where the defendant said, I was opening a pizzeria with a co-defendant. And then a trial testified that he was in the importation business of Precious Stones. And the Second Circuit rightly held that you can both open a pizzeria and be in the Precious Stones business. Counsel, we understand your position and you've much exceeded your time. Very good. Thank you. The case just argued is submitted.
judges: Graber, Berzon, Wilken